# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of:<br><br>INFORMATION ASSOCIATED WITH FACEBOOK<br>USER IDENTIFICATION NUMBER 100001220222858<br>https://www.facebook.com/deangelo.tassin<br>FACEBOOK USERNAME: Deangelo Darnell Tassin | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. _17-M-123_

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:

- ■ evidence of a crime;
- ■ contraband, fruits of crime, or other items illegally possessed;
- ■ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 18, United States Code, 922(a)(6), Title 18, United States Code, 922(d), and Title 18, United States Code, 922(g)

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Richard Connors, ATF
_____
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: _Sept. 14, 2017_

_____
*Judge's signature*

_____
*Printed Name and Title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Richard Connors, being first duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain Facebook user IDs that are stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscribers or customers associated with the user IDs.

2. It is believed that the information associated with the Facebook User IDs 1373617493 and 100001220222858 may contain evidence of violations of Title 18, United States Code, 922(a)(6) (any person in acquisition of any firearm knowingly furnish a false written or oral statement intended to deceive the dealer), Title 18, United States Code, 922(d) (sale or transfer of firearm to a prohibited person), and Title 18, United States Code, 922(g) (possession of a firearm by a prohibited person). As a result, a request is submitted for a search warrant to review information associated with the aforementioned Facebook User IDs. The information to be searched is described in the following paragraphs and in Attachment A.

3. I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) assigned to the Milwaukee Field Office since October of 2015. I have been employed as a full time law enforcement officer for over 2 years. I have received training at the Federal Law Enforcement Training Center in Glynco, GA. I attended the Criminal Investigator Training Program, as well as ATF's Special Agent Training Program. I have received training in the investigation of unlawful possession of firearms, the unlawful transfer of firearms, and the unlawful dealing in firearms without a dealers' license. Prior to becoming a Special Agent with the ATF, I received two (2) bachelor's degrees from Northern Illinois University in the fields of Sociology and International Relations. I have received a Master's degree from Northern Illinois University in the field of American Government.

4. I have received training in the investigation of firearms trafficking, and I work alongside several senior ATF agents who have worked extensive firearms trafficking investigations in the past. Based on my training, experience, and participation in firearms trafficking investigations, I know and/or have observed the following:

- I have utilized informants to investigate firearms trafficking. Through informant interviews and debriefings of individuals involved in firearms trafficking, I have learned about the manner in which individuals and organizations distribute firearms in Wisconsin;

- I have also relied on informants to obtain firearms from individuals on the streets (as opposed to licensed gun dealers), known as a controlled purchase;

- I have experience conducting street surveillance of individuals engaged in firearms trafficking. I have participated in the execution of numerous search warrants where firearms, ammunition, magazines, and firearms cases have been seized;

- I am familiar with the language utilized over the telephone to discuss firearms trafficking, and know that the language is often limited, guarded, and coded;

- I know that firearms traffickers often use electronic equipment, wireless and land-line telephones, and pagers to conduct firearms trafficking operations;

- I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

- I know that firearms traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate firearms trafficking;

- I know that firearms traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also

know that firearms traffickers often use nominees to purchase and/or title these assets to avoid scrutiny from law enforcement officials; and

- I know that firearms traffickers often use online firearms brokerage websites, such as "Armslist," to obtain firearms. I know that individuals who utilize "Armslist," will contact other users of the site regarding the sale of firearms via electronic mail (hereinafter referred to as EMAIL) and exchange phone numbers. Individuals then discuss price and meet up locations to exchange money for the firearms by phone. Individuals are not required to complete background checks through "Armslist," and individuals often do not check to see if the person to whom they are transferring the firearm is a convicted felon.

5. I have participated in several firearms trafficking investigations that involved the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these computers, cellular phones, cameras, and other digital storage devices. In many occasions, this electronic data has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement.

6. Furthermore, Affiant knows from training and experience it is common for drug users, drug dealers, firearms traffickers, and firearms straw purchasers to communicate via cellular phone through a variety of electronic media. It also common

for firearm traffickers and straw buyers to communicate through cellular phones and electronic media. Many times drug dealers also act as firearms traffickers by utilizing the non-prohibited status (no felony convictions) of drug users to obtain firearms. In turn, these firearms are used by the drug trafficking organization to protect and secure their goods and territory. The participants in these organizations can use text (SMS) messaging, phone calls, electronic mail, messaging applications, and various social media applications such as Facebook or Twitter.

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II. ITEMS TO BE SEARCHED

8. The Facebook pages belonging to Timothy J. O'BRIEN and Deangelo TASSIN, herein described as a personal website that is accessed with a username and password specific only to that page and further described in Attachment A. The following Facebook Page URL, Facebook Usernames, and associated Facebook Identifications Numbers:

- https://www.facebook.com/profile.php?id=100011134543692
  Facebook Username: TJ O'Brien, Facebook User ID: 1373617493.

- https://www.facebook.com/deangelo.tassin
  Facebook Username: Deangelo Darnell Tassin, Facebook User ID: 100001220222858.

The applied-for warrant would authorize the search and recovery of evidence particularly described in Attachment B.

### III. PROBABLE CAUSE

9. Affiant learned of possible violations of Title 18, United States Code, 922(a)(6) (any person in acquisition of any firearm knowingly furnish a false written or oral statement intended to deceive the dealer), Title 18, United States Code, 922(d) (sale or transfer of firearm to a prohibited person), and Title 18, United States Code, 922(g) (possession of a firearm by a prohibited person), after Affiant reviewed the ATF eTrace database and discovered unusual activity connecting Chicago, IL, and Kenosha, WI, through traced firearms.

10. Affiant knows from information published by the ATF's Violent Crime Analysis Branch (as of June 16, 2016) the national average for a gun to be recovered in a crime by law enforcement after the original purchase date is 10.48 years (also known as "time to crime"). Additionally, the average time to crime of firearms in Illinois is 11.81 years and 8.18 years in Wisconsin.

11. Affiant discovered Timothy O'BRIEN purchased multiple firearms from Federal Firearms Licensees (FFLs) that were recovered in crimes in the Chicago, IL that were well below the aforementioned time to crime averages.

12. Affiant knows from training and experience that a short time to crime can be an indicator of firearms trafficking. Furthermore, Affiant also knows from training and experience that Wisconsin is a source state for firearms trafficked to Chicago, IL. It is common for firearms to be purchased at Federal Firearms Licensees (FFLs) by "straw

buyers" to later be exchanged for money, illegal drugs, or other goods. A "straw buyer" is term used to describe a subject who purchases a firearm with the intent to provide the firearm to a second individual. The transaction is described typically as a "straw purchase." The "straw purchase" is typically performed to conceal the identity of the true possessor of the firearm who is likely a prohibited gun possessor.

13. Affiant knows from training and experience that geographic redundancy can be a strong indication of firearms trafficking. To illustrate, when firearms originate from a concentrated geographic location, and are recovered by law enforcement in a second concentrated geographic location, this can be indicator of an organized illegal firearms trafficking organization. In this instance, Affiant has identified numerous firearms purchased by O'BRIEN in and around Kenosha, WI, that have been recovered on the south side of Chicago, IL.

14. Affiant also knows from training and experience that the movement of the firearms over numerous jurisdictions is a common strategy utilized by criminal organizations to complicate detection by law enforcement and avoid any subsequent investigations. Furthermore, the movement of firearms over a vast distance can also be indicative of an illegal drug trade route. Affiant knows that drug trafficking organizations will often capitalize from their expansive connections throughout the United States to accumulate weapons from a variety of states. These firearms are often purchased by a variety of subjects who then transport them back to the organization's center of operation. This also aids in complicating the efforts of law enforcement to identify these organizations.

15. On August 11, 2017, Affiant conducted a search of the ATF eTrace database and discovered unusual activity connecting Chicago, IL and Kenosha, WI through traced firearms. Affiant discovered Timothy O'BRIEN (w/m, DOB 05/03/1989) purchased seven firearms from an FFL in Wisconsin, which were later recovered in crimes in Chicago, IL. All of these firearms had times to crime that were below both the national and state of Wisconsin averages.

16. Further analysis of O'BRIEN's purchasing habits revealed a multiple sale on June 11, 2015 from A & R Firearms in Kenosha, WI, for four assault style rifles of the exact same make, model, and caliber (MGE Wholesale Company, model WASR-10, 7.62 x 39 mm). Affiant knows from training and experience, the multiple or repetitive purchases of firearms of the same make, model, and caliber, can be an indicator of a person engaged in the trafficking of firearms or "straw purchasing."

17. ATF is aware of nineteen total firearms purchased by O'BRIEN since 2015 to the present date.

**FIREARM TRACES**

18. ATF eTrace no. T20160195921, linked to O'BRIEN, was for a Smith & Wesson pistol (model SD9VE, 9 mm, serial no. FXL3225). O'BRIEN purchased the firearm from Tom's Military and Gun, at a gun show in Franklin, WI on February 12, 2016. The firearm was recovered in the possession of Dangelo TASSIN (b/m, DOB 05/23/1989) in Chicago, IL on June 9, 2016. TASSIN has a 2008 felony conviction and was federally prohibited from the possession of firearms and ammunition. The firearm's time to crime is one-hundred eighteen (118) days.

19. ATF eTrace no. T20170150489, linked to O'BRIEN, was for a HS Products pistol (model XD40, .40 caliber, serial no. XD375839). O'BRIEN purchased the firearm from Tom's Military and Gun, at a gun show in Franklin, WI, on February 12, 2016. The firearm was recovered by the Chicago Police Department (CPD) on April 21, 2017 (CPD case no. 17CR0700701). The firearm's time to crime is four hundred thirty-four (434) days. This firearm was located in a consent search by CPD. During the incident, CPD arrested convicted felon Devon FREEMAN (b/m, DOB 03/04/1990) for felon in possession of a firearm. FREEMAN was federally prohibited from the possession of firearms and ammunition.

- Additionally, CPD tested the firearm (HS Products, model XD40, .40 caliber, serial no. XD375839) utilizing the National Integrated Ballistic Information Network (NIBIN), which assists law enforcement agents in determining whether a firearm was used in a shooting or shots fired incident. The result of this test revealed the firearm was forensically linked to fifteen unsolved shootings in Chicago, IL, including one unsolved homicide (CPD IR no. 1506432), which occurred on October 30, 2016.

20. ATF eTrace no. T20170062518, linked to O'BRIEN, was for a Smith & Wesson pistol (model SD9VE, 9 mm, serial no. FXA6169). O'BRIEN purchased the firearm from Tom's Military and Gun, at a gun show in Franklin, WI on December 20, 2015. The firearm was recovered in the possession of convicted felon Ronnie SMITH (DOB 10/21/1994) in Chicago, IL on February 22, 2017. SMITH was federally prohibited from

the possession of firearms and ammunition. The firearm's time to crime is four hundred thirty (430) days.

- Additionally, CPD tested the firearm (Smith & Wesson pistol, model SD9VE, 9 mm, serial no. FXA6169) utilizing NIBIN. The result of this test revealed that the firearm was forensically linked to three shooting incidents in Chicago, IL, including one homicide which occurred on April 7, 2016 (CPD report no. JA-1636900).

21. ATF eTrace no. T20150347102, linked to Timothy O'BRIEN, was for a Romarm/Cugir rifle (model WASR-10, 7.62 x 39 mm caliber, serial no. A1-32590-15). O'BRIEN purchased the firearm from A&R Firearms, located in Kenosha, WI, on June 11, 2015. The firearm was recovered in the possession of convicted felon Maurice SMITH (b/m, DOB 07/12/1981) in Chicago, IL on September 3, 2015. SMITH has multiple prior felony convictions and was federally prohibited from the possession of firearms and ammunition. The firearm's time to crime is eighty-four (84) days.

22. ATF eTrace no. T20170100711, linked to O'BRIEN, was for a Bersa pistol (model Thunder 40 Pro, .40 caliber, serial no. B60348). O'BRIEN purchased the firearm from The Gun Shop LLC, located in Kenosha, WI, on July 13, 2015. The firearm was recovered in the possession of convicted felon Michael HINTON (b/m, DOB 06/20/1987) in Chicago, IL on January 30, 2017. HINTON has multiple prior felony convictions for possession and the manufacture and delivery of a controlled substance, and was federally prohibited from the possession of firearms and ammunition. The firearm's time to crime is five hundred sixty-seven (567) days.

23. ATF eTrace no. T20170223652, linked to O'BRIEN, was for a Glock pistol (model 26, 9 mm, serial no. XPN670). O'BRIEN purchased the firearm from Tom's Military and Gun in Fond Du Lac, WI on July 25, 2015. The firearm was recovered in the possession of convicted felon Rayford SHEARER (b/m, DOB 06/10/1991) in Chicago, IL on July 11, 2017. SHEARER was federally prohibited from the possession of firearms and ammunition. The firearm's time to crime is seven hundred seventeen (717) days.

24. ATF eTrace no. T20170032587, linked to O'BRIEN, was for a Bersa pistol (model Thunder 45 UL CT PRO, .45 caliber, serial no. D85852). Affiant located an ATF Form 4473 documenting O'BRIEN's purchase of this firearm from A & R Firearms located in Kenosha, WI on May 29, 2015. The firearm was recovered in the possession of convicted felon Lekeif D. SMITH (DOB 12/06/1993) in Chicago, IL on January, 15, 2017. SMITH was federally prohibited from the possession of firearms and ammunition. The firearm's time to crime is five hundred ninety-six (596) days.

**INTERVIEW OF TIMOTHY O'BRIEN**

25. On November 3, 2016, personnel from the ATF - Chicago Field Office, SA Craig Fries and Task Force Officer (TFO) Jason Vachy interviewed O'BRIEN at his residence located at 5117 52nd Street, Kenosha, WI regarding the firearm traces pertaining to firearms he purchased. During the interview, O'BRIEN admitted to buying and selling firearms for profit. O'BRIEN stated he often purchased firearms and sold them when he needed money. O'BRIEN further explained he did not maintain any records of his firearm transactions. O'BRIEN stated he would often use the website

Armslist – an online firearms brokerage, Facebook, and other social media based outlets for selling his firearms. At the time of this interview, O'BRIEN stated he currently owned only one firearm, and he stated that the firearm was in the custody of the Kenosha Police Department due to an on-going criminal matter. It should be noted at the time of this Affidavit, Affiant is aware that O'BRIEN has purchased a total of nineteen firearms.

### FACEBOOK REVIEW OF TIMOTHY O'BRIEN

26. On August 11, 2017, Affiant reviewed the publicly visible area of the Facebook page belonging to O'BRIEN (Facebook Username: TJ O'Brien, Facebook User ID: 1373617493). Affiant positively confirmed the identity of O'BRIEN by comparing photographs located on the Facebook page to the Wisconsin DMV photograph on file for Timothy O'BRIEN (DOB 05/03/1989).

27. On June 20, 2016, O'BRIEN posted a photograph of what appears to be himself firing what appears to be a black rifle (unknown make, model, and caliber, with an object consistent in appearance with that of a sound suppressor attached to the barrel). In the comment section below the photograph, a subject with the Facebook Username "Aurele Hebert" asked in a post, "M4a1 with silencer? Lol." O'BRIEN responds "300 Blackout," and then posts, "With suppressor. Better back pressure for the round." It should be noted that "300 Blackout" is a type of rifle round designed for use with sound suppressed weapons.

28. On May 11, 2017, O'BRIEN posted a photo showing a black and silver motorcycle, and what appears to be a pistol (unknown make, model, and caliber, with a

silver slide and a black composite frame) sitting on the seat. The photograph is captioned "Missed muh babies ;)". Facebook has a notation listing the location of the posting of the photograph as Kenosha, WI.

### FACEBOOK REVIEW OF DEANGELO TASSIN

29. On August 11, 2017, Affiant reviewed the publicly visible area of the Facebook page belonging to Deangelo TASSIN (Facebook Username: Deangelo Darnell Tassin, Facebook User ID: 100001220222858). It should be noted that TASSIN was arrested on June 9, 2016 in the possession of a firearm purchased by O'BRIEN. Affiant positively confirmed the identity of TASSIN by comparing photographs located on the Facebook page to the CPD booking photograph on file for Deangelo TASSIN (DOB 05/23/1989, CPD IR no. 2275070). In numerous Facebook photographs, TASSIN can be seen displaying hand gestures commonly used to declare affiliation with the Gangster Disciples, which are a criminal street gang that is pervasive in Chicago, IL.

30. On April 8, 2012, TASSIN posted a photograph of what appears to be a black and silver pistol (unknown make, model, and caliber), tucked into the waistband of his pants.

31. On April 12, 2012, TASSIN posted a photograph of what appears to be a black Hi-point branded pistol (unknown model and caliber). The caption of the photograph is "Black 40 red beam."

32. On October 16, 2015, TASSIN posted a photograph of a clear plastic baggie containing a green leafy substance consistent with the appearance of marijuana.

33. On April 20, 2016, TASSIN posted a photograph of a green leafy substance consistent in appearance with that of marijuana, with the caption, "I smoke big shit put a whole 7 in sum shit."

## ASSOCIATES IN COMMON

34. On August 28, 2017, Affiant conducted an analysis of TASSIN's Facebook friend list and compared that to the friend list of the Facebook page belonging to Devon FREEMAN (Facebook Username: Devon Freeman, Facebook User ID: 100001614864375). FREEMAN was arrested on February 12, 2016 with a firearm purchased by O'BRIEN. Through this comparison, Affiant was able to determine TASSIN and FREEMAN have one associate in common, "Dawn Jones (b/f, Facebook Username: Dawn Jones, Facebook User ID: 100001743850585)."

35. On August 28, 2017, Affiant conducted analysis of O'BRIEN's Facebook friend list and compared that to the friend list of the page belonging to the previously identified black female with the Facebook Username, "Dawn Jones (b/f, Facebook Username: Dawn Jones, Facebook User ID: 100001743850585)." Through this analysis, Affiant was able to determine O'BRIEN and "Dawn Jones," have one associate in common, Facebook Username: Ernist Rinvil, Facebook User ID: 100001900457271.

## GENERAL FACEBOOK INFORMATION

36. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to

share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

37. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

38. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

39. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people

who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

40. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

41. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos

uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

42. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

43. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

44. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

45. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

46. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The

activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

47. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

48. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

49. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

50. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

51. Some Facebook pages are affiliated with groups of users, rather than one individual user. Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept

requests by users to enter. Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

52. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

53. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

54. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

55. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used.

For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

56. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND ITEMS TO BE SEIZED

57. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## IV. CONCLUSION

57. Based on the forgoing, I request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court of the Eastern District of Wisconsin is a district court of the United States that has jurisdiction over the offense(s) being investigated, 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## <u>ATTACHMENT A</u>

**Property to Be Searched:**

This warrant applies to information between January 1, 2015 and present date

associated with the following Facebook pages:

- https://www.facebook.com/profile.php?id=100011134543692
  Facebook Username: TJ O'Brien, Facebook User ID: 1373617493.

- https://www.facebook.com/deangelo.tassin
  Facebook Username: Deangelo Darnell Tassin, Facebook User ID: 100001220222858.

# ATTACHMENT B

**Particular items to be Seized:**

## I.     Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

1.     All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

2.     All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

3.     All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

4.     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of

which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

5. All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

6. All "check ins" and other location information;

7. All IP logs, including all records of the IP addresses that logged into the account;

8. All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

9. All information about the Facebook pages that the account is or was a "fan" of;

10. All past and present lists of friends created by the account;

11. All records of Facebook searches performed by the account;

12. All information about the user's access and use of Facebook Marketplace;

13. The types of service utilized by the user;

14. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

15.    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

16.    All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, 922(a)(6) (any person in acquisition of any firearm knowingly furnish a false written or oral statement intended to deceive the dealer), Title 18, United States Code, 922(d) (sale or transfer of firearm to a prohibited person), and Title 18, United States Code, 922(g) (possession of a firearm by a prohibited person), since December 20, 2015 for each user ID identified on Attachment A, information pertaining to the following matters:

1.    The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between O'Brien and others related to the relevant offense conduct of firearms trafficking;

2.    Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

3.    Evidence indicating the Facebook account owner's state of mind as it relates to the crimes under investigation;

4.	The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

5.	The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of Title 18, United States Code, 922(a)(6) (any person in acquisition of any firearm knowingly furnish a false written or oral statement intended to deceive the dealer), Title 18, United States Code, 922(d) (sale or transfer of firearm to a prohibited person), and Title 18, United States Code, 922(g) (possession of a firearm by a prohibited person), including records that help reveal their whereabouts.